**Reversed and Remanded and Opinion filed March 28, 2013.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-12-00096-CR

---

### JOSE VASQUEZ, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 228th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1333231**

---

### O P I N I O N

Appellant Jose Vasquez appeals his conviction for capital murder. After the jury found him guilty, the trial court assessed punishment at life in prison. In his sole issue, appellant complains that the trial court erred in denying his motion to suppress the videotaped confession he made to an investigating officer during custodial interrogation. Appellant argues that his statement was obtained by an impermissible two-step interrogation technique. We reverse and remand for a new

trial.

## *Background*

On April 16, 2010, appellant was arrested pursuant to a warrant and charged with two counts of capital murder. Officers chased, apprehended, and handcuffed appellant at a gas station, placed him in a squad car, and transported him to the police station for questioning. Officers placed appellant in an interview room, where he remained for nearly eight hours while being interrogated by three or four investigating officers. The officer who last questioned appellant ultimately obtained a confession that was not captured on videotape. Soon thereafter, the officer asked permission to videotape appellant's confession. Appellant complied with the request and repeated his confession.[1]

Appellant filed a written pretrial motion to suppress his confession on grounds that he was not given *Miranda*[2] warnings and he did not validly waive his rights before he confessed. Appellant subsequently filed another pretrial motion to suppress his oral statements on the sole ground that using the oral statements at trial would be prohibited by Texas Code of Criminal Procedure article 38.22, section 3.[3] The trial court carried the motions with trial and held a hearing outside the presence of the jury to determine the admissibility of the statements.

At the hearing, only the officer who obtained appellant's recorded statement

---

[1] The relevant facts concerning the crime are discussed below.

[2] *Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966) (prohibiting use of oral statement of accused made as result of custodial interrogation unless certain warnings are given and accused knowingly, intelligently, and voluntarily waives rights).

[3] Texas Code of Criminal Procedure article 38.22, section 3 restricts the admissibility in a criminal proceeding of statements made during custodial interrogation to statements that are recorded and obtained after the accused has been given a statutory warning akin to the *Miranda* warnings and "knowingly, intelligently, and voluntarily waives any rights set out in the warning."

testified. He did not know whether the other officers had given appellant *Miranda* warnings before initiating the interrogation.[4] The officer testified that he gave appellant *Miranda* warnings, as reflected on the videotape, but the officer did not testify that he also did so before appellant confessed off-camera.[5] At the beginning of the videotape recording, the officer states, "I'm going to read your rights to you

[4] The officer initially testified that he observed the other officers read appellant his *Miranda* warnings but then clarified that he actually observed officers read *Miranda* warnings to another suspect, as follows:

| [Officer:] | . . . I was in the monitoring room. When [the other officers] entered the room, you know, they read the defendant—and when they interviewed [another suspect], they also read him his legal warnings as well. |
|---|---|
| | . . . |
| [Defense counsel:] | . . . [W]here was [appellant] located when you saw [the other officers] talking to him? |
| [Officer:] | . . . I was not present when [the other officers] talked to [appellant]. I was in an interview room talking to [another suspect]. I was conducting an interview there while [another officer] was speaking to [appellant]. So, I was not present when he spoke to him, you know. |

[5] The officer testified as follows:

| [State's counsel:] | . . . Did you advise him of his legal rights and warnings? |
|---|---|
| [Officer:] | Yes, sir, I did. |
| [State's counsel:] | Did he appear—did you go through each individual legal right and warning with him? |
| [Officer:] | Yes, sir, I did. |
| [State's counsel:] | Did he appear to understand each individual legal right and warning? |
| [Officer:] | Yes, he did. |
| [State's counsel:] | Did he waive each individual legal right and warning that you gave him? |
| [Officer:] | Yes, sir, at the end. |
| [State's counsel:] | . . . And did he agree to speak with you having waived those rights? |
| [Officer:] | Yes, sir, he did. |

like I did a little earlier," but he did not indicate on the videotape or in his testimony whether the "earlier" reading of his rights occurred before or after the previous confession was made. The officer further testified that appellant never invoked his rights to remain silent or have counsel present. Appellant, however, testified he invoked his right to remain silent before custodial interrogation began and no officer gave him *Miranda* warnings until after he confessed off-camera. The trial court suppressed the statements that were not captured on videotape but admitted the videotaped confession.

## *Discussion*

In his sole issue, appellant argues the trial court erroneously admitted the videotaped confession because it was obtained by an improper two-step "question first, warn later" interrogation technique. *See Missouri v. Seibert*, 542 U.S. 600, 622 (2003) (Kennedy, J., concurring); *Carter v. State*, 309 S.W.3d 31, 35–36 (Tex. Crim. App. 2010). A "question first, warn later" interrogation technique consists of officers interrogating a suspect without providing *Miranda* warnings and obtaining a confession; then, after the inculpatory statements are made, officers provide *Miranda* warnings and obtain a waiver of the warnings. *See Seibert*, 542 U.S. at 604–05. Officers then have the suspect repeat the inculpatory statements in an attempt to cure the lack of *Miranda* warnings.[6] *See id.* at 605.

In reviewing a trial court's ruling on a motion to suppress, appellate courts must view all of the evidence in the light most favorable to the ruling. *State v. Garcia–Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). At a suppression hearing, the trial judge is the sole factfinder. *St. George v. State*, 237 S.W.3d 720,

---

[6] The classic example of this technique occurs when "the suspect's first, unwarned interrogation [leaves] 'little, if anything, of incriminating potential left unsaid,' making it 'unnatural' not to 'repeat at the second stage what had been said before.'" *Bobby v. Dixon*, 132 S. Ct. 26, 31 (2011) (citing *Seibert*, 542 U.S. at 616–17).

725 (Tex. Crim. App. 2007). We give almost total deference to the trial court's determination of historical facts when supported by the record, particularly if the findings turn on witness credibility and demeanor. *See State v. Ross*, 32 S.W.3d 853, 855–56 (Tex. Crim. App. 2000). The same deference is accorded to determinations of mixed questions of law and fact if their resolution depends upon witness credibility and demeanor. *Id*. at 856. Issues that present purely legal questions are considered under a de novo standard. *Id*. We will sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996).

In the plurality opinion *Missouri v. Seibert*, four justices of the Supreme Court concluded that a "question first, warn later" interrogation technique circumvented the objective of *Miranda* by rendering any warnings given ineffective. *Seibert*, 542 U.S. at 611–13; *see also Martinez v. State*, 272 S.W.3d 615, 619-20 (Tex. Crim. App. 2008). The *Seibert* plurality found that the purpose of this interrogation technique was to obtain a confession the suspect may not have made if he had understood his rights at the outset. *Seibert*, 542 U.S. at 611. In his concurring opinion in *Seibert,* Justice Kennedy determined that when a two-step interrogation technique is used in a deliberate, calculated way to undermine *Miranda* warnings, absent "curative measures," the post-warning statements must be excluded. *Seibert*, 542 U.S. at 622 (Kennedy, J., concurring). In *Carter*, the Court of Criminal Appeals expressly adopted Justice Kennedy's concurrence in *Seibert. Carter*, 309 S.W.3d at 38.

**No evidence that officers read appellant his *Miranda* warnings before appellant made off-camera incriminating statements.** The State, as the proponent of the evidence of appellant's confession, bears the burden of

5

establishing its admissibility. *See Martinez*, 272 S.W.3d at 623 (citing Tex. R. Evid. 104(a), *De la Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008), and *Cofield v. State*, 891 S.W.2d 952, 954 (Tex. Crim. App. 1994)). It is also the State's burden to establish a valid waiver of *Miranda* rights by a preponderance of the evidence. *See id.* at 619 n.10; *see also Seibert*, 542 U.S. at 608 n.1 ("The prosecution bears the burden of proving, at least by a preponderance of the evidence, the *Miranda* waiver."); *Ervin v. State*, 333 S.W.3d 187, 235-36 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd).

Here, the State did not present evidence that officers read appellant his *Miranda* warnings before he made the off-camera incriminating statements. The only officer to testify at the suppression hearing did not know whether the other officers had given appellant *Miranda* warnings before initiating the interrogation. The officer testified that he gave appellant *Miranda* warnings, as reflected on the videotape. He did not testify that he also did so before appellant confessed off-camera, although he said on the videotape recording, "I'm going to read your rights to you like I did a little earlier." The officer was not present when appellant was arrested at 2:00 p.m. Appellant had been in the interrogation room approximately eight hours before the testifying officer started his interrogation. The officer had been asked to assist in the interrogation around 5:15 p.m. and could "really just testify to anything that happened after 5:15." The officer testified he interviewed another suspect and did not begin interviewing appellant until 10:00 or 10:30 p.m. Thus, the officer was not aware of what transpired with appellant from 2:00 p.m. until the officer started his interview at 10:00 or 10:30 p.m. The State did not meet its burden to show appellant received *Miranda* warnings before making the off-camera incriminating statements. Therefore, we must address whether the State deliberately employed a two-step interrogation technique in a deliberate way to

6

undermine appellant's *Miranda* protections.

**Evidence that the two-step interrogation technique was deliberately employed.** Courts should determine "whether the evidence shows that [the interrogating officer] deliberately employed a two-step 'question-first, warn later' interrogation technique to circumvent [the] appellant's *Miranda* protections." *Carter*, 309 S.W.3d at 38; *Ervin*, 333 S.W.3d at 213. Because the "question of whether the interrogating officer deliberately withheld *Miranda* warnings will invariably turn on the credibility of the officer's testimony in light of the totality of the circumstances surrounding the interrogation," a factual finding regarding the officer's credibility is entitled to deference on appeal and is reviewed only for clear error.[7] *Carter*, 309 S.W.3d at 39; *Ervin*, 333 S.W.3d at 213. Here, the trial court did not make express factual findings. Thus, we shall imply fact findings that support the trial court's ruling so long as the evidence supports these implied findings. *Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007).

The trial court granted the motions to suppress in part and denied them in part, stating:

> Only the video statements are admissible. Statements that [appellant] made that were not videoed are not admissible in the State's case in chief. . . . [W]hat I'm doing is I'm granting your motion in part. . . . So, any statements that [appellant] makes outside the video, outside of the *Miranda* warnings that were stated on the video do not come

---

[7] When the two-step questioning tactic is not deliberately employed, "a suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite *Miranda* warnings." *See Oregon v. Elstad*, 470 U.S. 298, 318 (1985); *see also Carter*, 309 S.W.3d at 36; *Ervin*, 333 S.W.3d at 213. In this situation, when the first statement is unwarned but not coerced, "the admissibility of any subsequent statement should turn . . . solely on whether it is knowingly and voluntarily made." *Elstad*, 470 U.S. at 309; *see also Carter*, 309 S.W.3d at 32; *Ervin*, 333 S.W.3d at 213. "Unless a deliberate two-step strategy is employed, *Elstad* applies." *See Carter*, 309 S.W.3d at 37; *see also Ervin*, 333 S.W.3d at 213.

7

in. . . . The video itself is admissible.[8]

Because the trial court admitted the videotaped statement, it impliedly found the officers did not employ a two-step interrogation technique in a deliberate, calculated way to undermine appellant's *Miranda* warnings. *See Gutierrez*, 221 S.W.3d at 687. We must determine whether that finding is clear error because it is not supported by the record. *See Carter*, 309 S.W.3d at 39-41.

In *Martinez*, the Court of Criminal Appeals held that the State has the burden of proving that a two-step interrogation technique was not deliberately employed in light of the State's burden to show a confession is admissible. 272 S.W.3d at 623-24. No other Texas cases have addressed this issue.[9] In *Martinez*, police officers questioned the defendant about a robbery and murder before the defendant was given *Miranda* warnings. *Id*. at 618. Thereafter, a polygraph test was administered to the defendant, which took three to four hours. *Id*. The questions asked during the polygraph test were not in the record. *Id*. After the polygraph test, an officer informed the defendant that he had failed the test. *Id*. Appellant was then taken to municipal court, where a magistrate read him his *Miranda* warnings. *Id*. Upon his return to the police station, an officer again read appellant his *Miranda* warnings, and appellant was again questioned about the

---

[8] Defense counsel asserted three grounds for suppression at the hearing: (1) the voices on the video were not identified as required by article 38.22, section 3(a)(4); (2) "this is a two-step interview. And because of the two-step interview . . . once they got [appellant] to say what they wanted him to say, they took him in and videoed him and have his *Miranda* warning [sic] and he told the story again"; and (3) the video confession was not appellant's statement as required by article 38.22 because appellant answered the officer's leading questions based on his earlier unrecorded confession.

[9] Other jurisdictions have imposed this burden on the government as consistent with the government's burden to prove admissibility of a confession before it may come into evidence. *See, e.g., U.S. v. Capers*, 627 F.3d 470, 479 (2d Cir. 2010); *U.S. v. Stewart*, 536 F.3d 714, 719 (7th Cir. 2008); *U.S. v. Ollie*, 442 F.3d 1135, 1142-43 (8th Cir. 2006); *Ross v. State*, 45 So. 3d 403, 427 (Fla. 2010).

robbery and murder. *Id*. Appellant then gave incriminating statements on videotape. *Id*. The State argued appellant had the burden of producing an adequate record regarding what questions were asked during the polygraph test and any unwarned conversations. *Id*. at 623. The Court of Criminal Appeals noted,

> When the officers initially questioned [the defendant] at the police station without giving him *Miranda* warnings, they violated [the defendant's] constitutional rights. At the suppression hearing, the state failed to provide the polygrapher's name, the questions used during the polygraph examination, or the content of the initial interrogation of [the defendant], all of which are under the exclusive control of the state.

*Id*. at 623-24. In holding that appellant's videotaped statement was inadmissible, the court further noted,

> Here, [the defendant] was in custody for the purposes of *Miranda*; he gave both statements to law-enforcement officials after his formal arrest pursuant to an arrest warrant, and both statements were given at a police station. This indicates that the absence of *Miranda* warnings at the beginning of the interrogation process was not a mistake based on the interrogating officers' mistaken belief that appellant was not in custody, but rather a conscious choice.

*Id*. at 624.

In his concurrence, Judge Price stated, "I do not know whether [the State's] burden should extend to disproving circumstances that precede the *Miranda* warnings that might suffice, in contemplation of *Seibert*, to call the efficacy of those warnings into doubt." *Id*. at 628 (Price, J., concurring). But he noted without regard to which party carried the burden, the defendant "prove[d] circumstances that would impugn the efficacy of otherwise valid *Miranda* warnings." *Id*. Despite these statements and other statements that appear to conflict with the analysis in the opinion authored by Judge Johnson, Judge Price joined Judge Johnson's opinion, making it a five-judge majority opinion of the court. *See id*. at 617-27

9

(Johnson, J., majority) (noting that Judge Price joins Judge Johnson's opinion); *Id.* at 627-30 (Price, J., concurring) (stating that Judge Price joins Judge Johnson's opinion and referring to Judge Johnson's opinion as the "majority opinion").

Justice Hervey dissented, and three justices joined her dissent. She stated she would require the defendant to present a sufficient record showing a police officer deliberately employed the two-step questioning tactic. *Id.* at 631 (Hervey, J., dissenting). She cited cases that stand for the proposition that it is the defendant's burden to prove his statements were the result of custodial interrogation and then the burden shifts to the State to defeat the defendant's claim. *Id.* at 643. Here, it is undisputed that appellant was in custody when he made his statements.[10] He had been arrested pursuant to a valid arrest warrant.

As in *Martinez*, the record in this case also is incomplete.[11] There is no evidence of what transpired before the officer who testified began his interrogation at 10 or 10:30 p.m. Appellant confessed, and the officer "came out of the video room . . . and told [the other officers] that [appellant] had confessed" and "we need to get it on video." A few minutes later, at "about midnight," the officer reentered the interrogation room, started the recording, and read appellant his *Miranda* warnings. Although the officer stated on the video that he read appellant his *Miranda* warnings "a little earlier," no evidence shows when this occurred and thus whether it occurred before appellant made any incriminating statements off-camera. On the video, appellant repeats earlier unrecorded statements, which are not in the record, but the officer refers to them numerous times during the video

---

[10] The State argued otherwise in its brief but admitted during oral argument that appellant was in custody for purposes of *Miranda.*

[11] The *Martinez* court held that an incomplete record does not preclude an appellate court from analyzing whether a two-step questioning tactic was deliberately employed because it is the State's burden to show the confession is admissible. *See Martinez*, 272 S.W.3d at 623.

10

recording.[12] The State presented no evidence that the two-step interrogation was not deliberately employed to undermine the *Miranda* warnings.

Appellant, however, presented some evidence that the interrogation technique was deliberately employed to undermine the *Miranda* warnings. Appellant testified "at least four officers" interviewed him, including the one who testified at the hearing. His counsel asked, "Did they ever read you your *Miranda* warnings? Warnings mean you have a right to have a lawyer." Appellant responded, "No, sir." Appellant testified the first time he received *Miranda* warnings was after he confessed. He said the officer told him, "I want you to tell me again and first I've got to read you your *Miranda* rights." Appellant further testified that when the other officers were interviewing him, "I was telling them that I knew my rights and I didn't want to talk."[13] He said the officers were telling him, "[I]f I didn't want to die, I needed to say something."[14]

Though the trial court was entitled to discredit appellant's testimony, the State had the burden to show that its interrogation technique was not deliberately employed to undermine the *Miranda* warnings. *See id*. at 623-24. Appellant was in custody for *Miranda* purposes when he was being interrogated. He gave both statements to law-enforcement officers after he had been arrested pursuant to a valid arrest warrant. Both statements were given at a police station. No evidence was presented by the State that officers read appellant his *Miranda* warnings until

---

[12] For example, after administering the *Miranda* warnings, the officer begins the video interrogation by stating, "Tell me what we talked about earlier." The officer also states, "Earlier you said you were out drinking with a friend. Tell me what happened." "Earlier you said the passenger door was open." "Earlier you said you ran down the street."

[13] The officer testified appellant had never asked to stop talking or for an attorney during the entire course of the officer's interview of appellant.

[14] His counsel asked him: "In other words, if you didn't want to get the death penalty, you had to . . . tell them?" to which he responded, "Yes, sir."

11

after the first confession was obtained. This indicates that the absence of *Miranda* warnings before the beginning of the interrogation process was not a mistake based on the interrogating officers' mistaken belief that appellant was not in custody, but rather a conscious choice. *See id.* at 624.

**No curative measures**. As set forth above, absent curative measures, the post-warning statements must be excluded. *Seibert*, 542 U.S. at 622 (Kennedy, J., concurring); *Carter*, 309 S.W.3d at 37. "[C]urative measures should be designed to ensure that a reasonable person in the suspect's situation would understand the import and effect of the *Miranda* warning and of the *Miranda* waiver." *Martinez*, 272 S.W.3d at 621; *see also Ervin*, 333 S.W.3d at 212-13. Curative measures allow the accused to distinguish the two contexts and appreciate that the interrogation has taken a new turn. *Martinez*, 272 S.W.3d at 621; *Ervin*, 333 S.W.3d at 213. Examples of appropriate curative measures include (1) a substantial break in time and circumstances between the unwarned statement and the *Miranda* warning; (2) explaining to the defendant that the unwarned statements, taken while in custody, are likely inadmissible; (3) informing the suspect that, although he previously gave incriminating information, he is not obligated to repeat it; (4) interrogating officers refraining from referring to the unwarned statement unless the defendant refers to it first; or (5) if the defendant does refer to the pre-*Miranda* statement, the interrogating officer stating that the defendant is not obligated to discuss the content of the first statement. *Martinez*, 272 S.W.3d at 626-27 (referring to examples in *Seibert* plurality and concurrence). No evidence was presented that curative measures were taken in this case. We conclude on this record the trial court's implicit finding that the officers did not employ a two-step interrogation technique in a deliberate, calculated way to undermine appellant's *Miranda* warnings is not supported by the record, and it was clear error. Thus, the

12

trial court erred in admitting appellant's videotaped statement.

**Admission of the statement was harmful**. We must determine whether admitting appellant's videotaped statement was harmful error requiring reversal. *See* Tex. R. App. P. 44.2(a). The admission of incriminating statements made during a custodial interrogation where no proper *Miranda* warnings were given constitutes constitutional error, and this court must reverse unless we determine beyond a reasonable doubt that the error did not contribute to appellant's conviction. *See* Tex. R. App. P. 44.2(a); *Akins v. State*, 202 S.W.3d 879, 891-92 (Tex. App.—Fort Worth 2006, pet. ref'd.). In analyzing whether the constitutionally erroneous admission of a defendant's statement was harmless, we review whether the admission of appellant's statement contributed to the jury's verdict of guilty in this cause, regardless of whether there is evidence independent of the statement that is otherwise sufficient to sustain the jury's verdict of guilt. *McCarthy v. State*, 65 S.W.3d 47, 55 (Tex. Crim. App. 2001). If there is a reasonable likelihood that the error materially affected the jury's deliberations, then the error is not harmless beyond a reasonable doubt. *Id*.

A defendant's statement, especially a statement implicating him in the commission of the charged offense, is unlike any other evidence that can be admitted against the defendant. *Id*. at 55-56. The presence of other overwhelming evidence that was properly admitted which supports the material fact to which the inadmissible evidence was directed may be an important factor in the evaluation of harm. *Wall v. State*, 184 S.W.3d 730, 746 (Tex. Crim. App. 2006). However, a confession is likely to leave an indelible impact on a jury. *McCarthy*, 65 S.W.3d at 56.

> If the jury believes that a defendant has admitted the crime, it will doubtless be tempted to rest its decision on that evidence alone, without careful consideration of the other evidence in the case. Apart,

perhaps, from a videotape of the crime, one would have difficulty finding evidence more damaging to a criminal defendant's plea of innocence.

*Id*. (quoting *Arizona v. Fulminante*, 499 U.S. 279, 313 (1991) (Kennedy, J., concurring)).

Here, appellant confessed to shooting the two complainants execution-style as they sat in a car and to stealing the complainants' marijuana and cars. He also confessed that he threw the gun he used in the commission of the offenses into a bayou. The State presented evidence that corroborated the confession. A neighbor heard gun shots, left his house, and saw the two bodies and a man stumbling toward the bayou. A witness testified that he walked into a house after the shooting. The witness testified that a group of people, including appellant, was in the house, and the people were celebrating. The witness testified, "*They* said that they had shot somebody." He said "*they*" showed him a bag of marijuana. He could not remember who showed him the bag, but he "guess[ed]" it was appellant. However, he said appellant "was not really the one that was speaking that much." He said "they" told him "they" had a gun "that they threw away." He also said appellant's accomplice Walter Martinez did most of the talking.

Another witness had gone to the house with the first witness to obtain marijuana. That witness said appellant and Martinez were there with a group of people. Appellant and Martinez were "jumpy." The second witness testified that appellant said "[t]hey killed two people because of a bag of weed." Appellant also purportedly said that "[t]hey had [the complainants'] car in their garage." Defense counsel elicited testimony from the second witness that in his earlier statement to police, he said Martinez did the talking, not appellant. No evidence was presented that appellant was the shooter other than appellant's videotaped confession. Although some evidence of appellant's guilt corroborates his confession, we

14

cannot say there is no reasonable likelihood that the State's use of appellant's statement materially affected the jury's deliberations. *See id*.

We sustain appellant's sole issue. We reverse the judgment of the trial court and remand for a new trial.[15] *See* Tex. R. App. P. 43.2(d); *McCarthy*, 65 S.W.3d at 56.

/s/    Martha Hill Jamison
       Justice

Panel consists of Justices Frost, Christopher, and Jamison.

Publish — TEX. R. APP. P. 47.2(b).

---

[15] A motion to suppress is a specialized objection to the admissibility of evidence. *Black v State*, 362 S.W.3d 626, 633 (Tex. Crim. App. 2012). When an appellate court concludes that certain evidence is inadmissible, this is generally the law of the case. *See Howlett v. State*, 994 S.W. 2d 663, 666 (Tex. Crim. App. 1999) ("[A]n appellate court's resolution of a question of law in a previous appeal of the same case will govern the disposition of the same issue when raised in a subsequent appeal."). The law of the case doctrine may apply to a motion to suppress. *See, e.g., Satterwhite v State*, 858 S.W. 2d 412, 430 (Tex. Crim. App. 1993) (applying law of the case because none of the facts surrounding search had changed); *Ware v State*, 736 S.W.2d 700, 701 (Tex. Crim. App. 1987) (applying law of the case when the facts and legal issues were "virtually identical"). However, though we have concluded that the State did not meet its burden of proof on this record, nothing prevents the State from offering additional evidence in support of the admissibility of the confession on remand. *See Black*, 362 S.W.3d at 633-34; *Montalvo v State*, 846 S.W. 2d 133, 136 (Tex. App.—Austin 1993, no pet.).