PD-0078-15

PD-0078-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 6/26/2015 12:21:22 PM
Accepted 6/29/2015 3:05:52 PM
ABEL ACOSTA
CLERK

NO. PD-15-0078

IN THE COURT OF CRIMINAL APPEALS

---

JOSE JESUS VASQUEZ
*Appellant*

v.

THE STATE OF TEXAS
*Appellee*

---

No. 14-12-00096-CR
In the Court of Appeals for the Fourteenth District of Texas

---

No. 1333231
In the 228th District Court of Harris County, Texas

---

APPELLANT'S BRIEF ON DISCRETIONARY REVIEW

---

ORAL ARGUMENT PERMITTED

FILED IN
COURT OF CRIMINAL APPEALS

June 29, 2015

ABEL ACOSTA, CLERK

**ALEXANDER BUNIN**
Public Defender
Harris County, Texas

**MARK KRATOVIL**
Assistant Public Defender
Texas Bar Number 24076098
1201 Franklin Street, 13th Floor
Houston, Texas 77002
Telephone: (713) 274-6728
Facsimile: (713) 437-4339
mark.kratovil@pdo.hctx.net

**Counsel for Appellant**

## IDENTITY OF PARTIES AND COUNSEL

| | |
|---|---|
| APPELLANT | Jose Jesus Vasquez<br>TDCJ # 01767401<br>Telford Unit<br>3899 State Highway 98<br>New Boston, Texas 75570 |
| DEFENSE COUNSEL AT TRIAL | James Stafford<br>515 Caroline Street<br>Houston, Texas 77002 |
| | Marcy E. Kurtz<br>711 Louisiana Street, Suite 2300<br>Houston, Texas 77002 |
| DEFENSE COUNSEL ON APPEAL | Alex Bunin<br>Chief Public Defender<br>Harris County, Texas |
| | Mark Kratovil<br>Assistant Public Defender<br>1201 Franklin Street, 13th Floor<br>Houston, Texas 77002 |
| STATE COUNSEL AT TRIAL | Devon Anderson<br>District Attorney<br>Harris County, Texas |
| | Eric Devlin<br>Assistant District Attorney<br>1201 Franklin Street, 6th Floor<br>Houston, Texas 77002 |
| STATE COUNSEL ON APPEAL | Eric Kugler<br>Assistant District Attorney<br>1201 Franklin Street, 6th Floor<br>Houston, Texas 77002 |
| PRESIDING JUDGE AT TRIAL | The Honorable Marc Carter<br>228th Judicial District Court<br>1201 Franklin Street, 16th Floor<br>Houston, Texas 77002 |

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL......................................................................... ii

TABLE OF CONTENTS ............................................................................................... iii

INDEX OF AUTHORITIES ........................................................................................... vii

STATEMENT OF THE CASE ........................................................................................... 1

ISSUES PRESENTED ..................................................................................................... 3

STATEMENT OF FACTS................................................................................................. 3

SUMMARY OF THE ARGUMENT.................................................................................... 6

ARGUMENT.................................................................................................................. 8

**RESPONSE TO THE STATE'S FIRST ISSUE:** The Appellant's pre-trial motions alleging that *Miranda* warnings were withheld, along with the subject matter explored at the hearing on the motion to suppress and defense counsel's oral objection complaining of a "two-step interview," preserved the *Seibert* issue for appellate review... ........................................... 8

A. Plain English Will Suffice To Preserve Error........................................... 10

B. This Court Has Previously Held a *Seibert* Complaint Is Preserved For Appellate Review When a Motion To Suppress Raises the Issue of Voluntariness And a Hearing Is Held On the Motion ...................................................................... 10

    a. The motion to suppress filed in *Hunt v. State*, which was held sufficient to preserve error, contains language almost identical to those filed in the present case ................................................................................................. 11

    b. In holding that error was not preserve, this Court previously advised in *Batiste v. State* that language similar to what defense counsel said at the motion to suppress hearing would preserve error for appellate review of a *Seibert* claim................................................................................................. 13

    c. The civil case law relied on by the State is not applicable to the present case and is factually distinguishable.................................................................. 15

iii

C. The State Bears the Burden Of Establishing the Admissibility Of the Appellant's Statement and Compliance With *Miranda* After the Appellant Carried His Burden Of Showing the Statement Was the Product of Custodial Interrogation ................................................................................................................. 16

D. Defense Counsel's Pre-Trial Motions and Oral Objection Were Sufficient To Put the Trial Court And the State On Notice As To the Nature of the Complaint ................................................................................................................. 19

    a. The trial court's ruling makes sense in the context of a *Seibert* objection made during an Article 38.22 hearing in light of the pre-trial motions to suppress ..................................................................................................... 20

        i. The trial court's ruling indicated that defense counsel's Seibert objection was overruled and that the unrecorded oral statements would be suppressed, the latter of which is part of what the Appellant sought in his second motion to suppress ........................... 21

        ii. Because *Seibert* deals with a statement's voluntariness, an Article 38.22 hearing is the appropriate and only vehicle available to a defendant through which a *Seibert* challenge can be explored and raised ................................................................................................. 22

    b. The State had the option to request that the trial court reopen testimony on the motion to suppress, but did not do so ........................................... 24

E. The Majority Was Correct In Holding That Error Was Preserved ..................... 26

**RESPONSE TO THE STATE'S SECOND ISSUE:** The trial court's written findings of fact explicitly state that the Appellant was subject to custodial interrogation prior to receiving and waiving his *Miranda* warnings on the recorded statement ................................................................................................. 26

A. The Appellant Was Under Arrest, Held In the Homicide Office, And Subjected To Questioning By Law Enforcement Prior To His Videotaped Statement .... 27

B. The State Has Not Preserved This Claim For Appellate Review ....................... 28

C. The Majority Correctly Held That the Appellant Was the Subject of Custodial Interrogation ................................................................................................... 29

**RESPONSE TO THE STATE'S THIRD ISSUE:** The record is devoid of evidence showing the Appellant received *Miranda* warnings prior to the start of the videotaped statement, and the State failed to carry its burden demonstrating that a two-step interrogation technique was not deliberately used. ...................................................................................................... 30

A. The Trial Court's Findings Are Not Entitled To Deference When They Are Not Supported By the Record .................................................................. 31

    a. The trial court's findings did not turn on a credibility determination, as there is no evidence in the record to support the finding that the Appellant received off-camera *Miranda* warnings ................................................. 32

    b. The trial court made no findings as to Detective Bolton's testimony that he learned about the Appellant's unrecorded interview directly from Sergeant Padilla ................................................................. 34

B. The Burden To Show a Two-Step Interrogation Was Not Deliberately Employed Falls On the State, And the State Failed To Carry Its Burden ............... 35

C. The Majority Was Correct In Holding the State Failed To Carry Its Burden On Both the Issues Of the Appellant's Receipt of Unrecorded *Miranda* Warnings And That a Two-Step Interrogation Technique Was Not Deliberately Used .. 38

**RESPONSE TO THE STATE'S FOURTH ISSUE:** The erroneous admission of the recorded statement contributed to the Appellant's conviction, as the recorded statement was the primary piece of evidence identifying the Appellant as the shooter of the complaiant, as opposed to the co-defendant, and was the only piece of evidence the jury asked to review during deliberations.. ...................................................................................... 39

A. A Violation Of *Seibert* Is Constitutional Error And the Harm Analysis Under Rule 44.2(a) Is Applied ............................................................................. 39

B. The Appellant's Statement Was the Primary Piece Of Evidence Identifying Him As the Shooter ......................................................................................... 41

C. The Appellant's Statement Was Viewed By the Jury On Multiple Occasions And Was the Only Piece Of Evidence the Jury Asked To Review .................... 42

    a. The recorded statement was emphasized by the State during closing arguments......................................................................................................... 42

    b. The jury asked to view the statement during deliberations...................... 43

    c. The defensive theory that the Appellant acted in self-defense or was guilty only of the lesser-included offense of murder was undermined by the recording ......................................................................................... 44

  D. The Majority Correctly Held That the Appellant's Recorded Statement Likely Affected the Jury's Deliberations ........................................................................ 44

PRAYER ............................................................................................................................ 46

CERTIFICATE OF SERVICE............................................................................................. 47

CERTIFICATE OF COMPLIANCE .................................................................................... 48

# INDEX OF AUTHORITIES

**Federal Cases**

*Anderson v. Bessemer City*, 470 U.S. 564 (1985)......................................................................33

*Miranda v. Arizona,* 384 U.S. 436 (1966).......................................................................*passim*

*Missouri v. Seibert*, 542 U.S. 600 (2003).......................................................................*passim*

**State Cases**

*Amador v. State*, 275 S.W.3d 872 (Tex. Crim. App. 2008) ...............................................32

*Batiste v. State*, No. AP-76,600, 2013 WL 2424134 (Tex. Crim. App. June 5, 2013) (not

    designated for publication) ......................................................................................13, 14

*Bekendam v. State*, 441 S.W.3d 295 (Tex. Crim. App. 2014) .....................................23, 24

*Black v. State*, 362 S.W.3d 626 (Tex. Crim. App. 2012) .............................................24, 25

*Carmouche v. State*, 10 S.W.3d 323 (Tex. Crim. App. 2000) ......................................33, 34

*Carrillo v. State*, 98 S.W.3d 789 (Tex. App.—Amarillo 2003, pet. ref'd).......................13

*Carter v. State*, 309 S.W.3d 31 (Tex. Crim. App. 2010) .......................................31, 35, 36

*Everitt v. State*, 407 S.W.3d 259 (Tex. Crim. App. 2013) .................................................10

*Ford v. State*, 305 S.W.3d 530 (Tex. Crim. App. 2009).....................................................19

*Gardner v. State*, 306 S.W.3d 274, 293-94 (Tex. Crim. App. 2009), cert. denied, 131

    S.Ct. 103 (2010)..................................................................................................................27

*Herrera v. State*, 241 S.W.3d 520 (Tex. Crim. App. 2007) ...............................................17

*Hunt v. State*, No. PD-0152-12, 2013 WL 3282973 (Tex. Crim. App. June 26, 2013)

  (not designated for publication)...................................................................11, 12, 13

*Lankston v. State*, 827 S.W.2d 907 (Tex. Crim. App. 1992) ........................................10, 19

*Jones v. State*, 119 S.W.3d 766 (Tex. Crim. App. 2003) ...................................................... 39

*Martinez v. State*, 272 S.W.3d 615 (Tex. Crim. App. 2008).....................................16, 17, 18

*Miller v. State*, 393 S.W.3d 255 (Tex. Crim. App. 2012).................................................... 31

*McCarthy v. State*, 65 S.W.3d 47 (Tex. Crim. App. 2001)......................................39, 40, 44

*Oursbourn v. State*, 259 S.W.3d 159 (Tex. Crim. App. 2009)............................................. 24

*Phillips v. Bramlett*, 288 S.W.3d 876 (Tex. 2009) .................................................................. 15

*State v. Mercado*, 972 S.W.2d 75 (Tex. Crim. App. 1998) .................................................. 29

*State v. Ross*, 32 S.W.3d 853 (Tex. Crim. App. 2000) .......................................................... 31

*Swain v. State*, 181 S.W.3d 359 (Tex. Crim. App. 2005)...................................................... 14

*Vasquez v. State*, 411 S.W.3d 918 (Tex. Crim. App. 2013) ........................2, 12, 23, 24, 26

*Vasquez v. State*, 397 S.W.3d 850 (Tex. App.—Houston [14th Dist.] 2013, pet. granted)

  ..............................................................................................................................2, 5, 12, 27

*Vasquez v. State*, 453 S.W.3d 555 (Tex. App.—Houston [14th Dist.] 2015, pet. granted)

  ........................................................................................................................... *passim*

*Vasquez v. State*, 453 S.W.3d 555 (Tex. App.—Houston [14th Dist.] 2015, pet. granted)

  ........................................................................................................................... *passim*

*Westbrook v. State*, 29 S.W.3d 103 (Tex. Crim. App. 2000)............................................... 40

**Constitional Provisions, Statutes, and Rules**

Tex. Code Crim. Proc. art. 38.22 (West 2014)...........................................2, 21, 22, 23, 24

Tex. Code Crim. Proc. art. 44.01 (West 2014)................................................................ 29

Tex. Const. Art. V § 3.................................................................................................... 15

Tex. R. App. Proc. 33.1 (West 2014) ...................................................................10, 22, 29

Tex. R. App. Proc. 44.2 (West 2014) ....................................................................8, 39, 40

Tex. R. App. Proc. 47.7 (West 2014) .............................................................................. 13

**Secondary Sources**

LaFave, et. al., 7 *Criminal Procedure* § 27.6 (3d ed. 2007)......................................................... 40

## STATEMENT OF THE CASE

The Harris County District Attorney's Office charged Jose Jesus Vasquez ("Appellant") by indictment with capital murder. Specifically, the Appellant was alleged to have caused the deaths of Aleksander Lobos and Suu Nguyen. (C.R. at 2).

Voir dire began on January 23, 2012 and a jury was seated the following morning. (2 R.R. at 200-201). Prior to trial, the defense filed two motions to suppress seeking to exclude the videotaped statement the Appellant made to homicide detectives as well as unrecorded oral statements that were not recorded. (C.R. at 54-58, 76-79). These motions were not immediately ruled on. Instead, the trial judge made a notation on the defense's proposed orders stating that the hearing would be held during the trial, but outside the presence of the jury. (C.R. at 58, 79). This hearing was conducted on January 25, 2012 after the commencement of testimony. (4 R.R. at 79-108). The trial judge ultimately ruled that the defense's motion would be granted in part and that "any statements that [the Appellant] makes outside the video, outside of the *Miranda* warnings that were stated on the video do not come in," but that "The video itself is admissible." (4 R.R. at 106).

The Appellant was convicted on January 26, 2012 of capital murder. Because the State did not elect to seek the death penalty, an automatic sentence of life without parole was assessed. (5 R.R. at 106-107). No post-judgment motions were filed and

The Appellant's notice of appeal was certified by the trial court on January 26, 2012. (C.R. at 151-152).

On this cases first appearance before the Fourteenth Court of Appeals, in a unanimous and published opinion authored by Justice Jamison, the Court of Appeals held the trial court erred in admitting the Appellant's videotaped statement and that this erroneous admission caused the Appellant harm. Thus, the Appellant's conviction was reversed and remanded to the trial court. *Vasquez v. State*, 397 S.W.3d 850 (Tex. App.—Houston [14th Dist.] 2013, pet. granted).

The State sought discretionary review from this Court. In a unanimous opinion authored by Judge Womack, this Court declined to rule on the merits of the case and remanded the case to the trial court with instructions to enter written findings of fact pursuant to Texas Code of Criminal Procedure article 38.22 section 6. *Vasquez v. State*, 411 S.W.3d 918 (Tex. Crim. App. 2013). Pursuant to this opinion, the trial court entered written findings of fact on May 7, 2014. (Supp. C.R. at 19-26).

The case then returned to the Fourteenth Court of Appeals, where the Appellant prevailed a second time. *Vasquez v. State*, 453 S.W.3d 555 (Tex. App.—Houston [14th Dist.] 2015, pet. granted). The opinion of the Court of Appeals was not unanimous in this second appearance, as Chief Justice Frost authored a dissent which would have held that the Appellant did not preserve error. *Id.* at 577-580 (Frost, C.J., dissenting). Again, the State sought discretionary review from this Court.

## ISSUES PRESENTED

**RESPONSE TO THE STATE'S FIRST ISSUE:** The Appellant's pre-trial motions alleging that *Miranda* warnings were withheld, along with the subject matter explored at the hearing on the motion to suppress and defense counsel's oral objection complaining of a "two-step interview," preserved the *Seibert* issue for appellate review.

**RESPONSE TO THE STATE'S SECOND ISSUE:** The trial court's written findings of fact explicitly state that the Appellant was subject to custodial interrogation prior to receiving and waiving his *Miranda* warnings on the recorded statement.

**RESPONSE TO THE STATE'S THIRD ISSUE:** The record is devoid of evidence showing the Appellant received *Miranda* warnings prior to the start of the videotaped statement, and the State failed to carry its burden demonstrating that a two-step interrogation technique was not deliberately used.

**RESPONSE TO THE STATE'S FOURTH ISSUE:** The erroneous admission of the recorded statement contributed to the Appellant's conviction, as the recorded statement was the primary piece of evidence identifying the Appellant as the shooter of the complainants, as opposed to the co-defendant, and was the only piece of evidence the jury asked to review during deliberations.

## STATEMENT OF FACTS

This case concerns the admissibility of the videotaped statement the Appellant provided to homicide detectives with the Houston Police Department. On the evening of April 1, 2010, Walter Gallo sought to acquire a pound of hydroponic marijuana. In the pursuit of this venture, Gallo contacted Walter Martinez, a former co-worker of his. (3 R.R. at 193-195). Martinez then contacted Alexander Lobos and Suu Nguyen—the complainants in the present case—and arranged for the delivery of the mari-

3

juana. (4 R.R. at 48-50). Gallo testified that once he arrived at Martinez's house to retrieve the marijuana, Martinez and the Appellant informed him that they had just shot two people. (4 R.R. at 214). A warrant was subsequently issued for the Appellant's arrest and he was taken into custody approximately two weeks later on April 16, 2010. (5 R.R. at 65-72).

After the Appellant had been apprehended by police at approximately 2:00 p.m., (4 R.R. at 74, 95), he was transported to the homicide squad's offices and was placed in an interview room at sometime before 5:15 p.m. on April 16, 2010. (4 R.R> at 79-81, 89). Although Detective Richard Bolton eventually recorded a one-on-one interview he conducted with the Appellant, at least two other officers, (4 R.R. at 89), and as possibly as many as four interviewed and questioned the Appellant prior to the recorded interview. (4 R.R. at 90, 97). This interview was conducted in an interview room in the homicide division where video and audio equipment enabled officers not present in the interview room to monitor what was transpiring behind closed doors. (4 R.R. at 87-89).

Detective Bolton began his unrecorded interview with the Appellant at approximately 10:00 p.m. and testified that during the course of this interview, the Appellant admitted his involvement in the deaths of the complainants. (4 R.R. at 91). Once Detective Bolton had extracted this confession, he exited the room and spoke with two other officers who advised him that "we need to get it on video." *Id.* Upon Detective Bolton's reentry into the interview room, the video recording commenced. (4 R.R. at

4

91-92). At the start of the recording, Detective Bolton can be seen and heard reading the Appellant his *Miranda* rights. *Id.* Although Detective Bolton testified that he had read the Appellant his legal rights and warnings and that the Appellant appeared to understand them, it is apparent from Detective Bolton's testimony that this was a reference to the warnings Detective Bolton can be observed reading to the Appellant on the videotape. (4 R.R. at 81-82). The recording contains numerous instances wherein Detective Bolton requests that the Appellant repeat certain statements that Detective Bolton says the Appellant had told him in their previous unrecorded interview. (4 R.R. at 92).[1]

Although the Appellant elected not to testify during the guilt-innocence phase of the trial, he did provide testimony during the suppression hearing. According to the Appellant, he was not given his *Miranda* warnings until after his initial unrecorded confession to Detective Bolton. (4 R.R. at 97-98).

Following testimony from Detective Bolton and the Appellant—the only two witnesses presented at the suppression hearing—defense counsel put a finer point on his objection to the admission of the Appellant's videotaped statement to police. Specifically, defense counsel's argument was that this was an impermissible "two-step" interview where a confession was first obtained during questioning conducted

---

[1] *See also* State's Exhibit 150 (video recording of the Appellant's statement to Detective Bolton); *Vasquez*, 397 S.W.3d at 857 n. 12.

prior to the giving of *Miranda* warnings, and that the Appellant was read his *Miranda* rights for the first time once the recording had begun. (4 R.R. at 105-106). The trial court granted the defense's motion in part, by suppressing the unrecorded statements made by the Appellant prior to the start of the video recording, but ruling that "[o]nly the video statements are admissible." (4 R.R. at 106).

## SUMMARY OF THE ARGUMENT

This case turns almost entirely on the proceedings in the trial court during a hearing on the defense's two motions to suppress. (4 R.R. at 79-108; C.R. at 54-57, 76-79). Put succinctly, the State failed to carry its burden during this hearing demonstrating that the Appellant's videotaped statement was admissible in two ways. First, the State offered no evidence or testimony demonstrating that the Appellant received his *Miranda* warnings prior to the start of the recorded statement. Second, the State did not present any evidence showing that law enforcement had not deliberately used a two-step interrogation technique of the kind specifically prohibited by the United States Supreme Court in *Missouri v. Seibert*, 542 U.S. 600 (2003).

Although the trial court found in its written findings of fact that the State had carried its burden on both of these issues, (Supp. C.R. at 23-26), the record is devoid of evidence to support the trial court's findings in this respect. The testimony cited by both the trial court and the State in support of these findings is, at best, implausible on its face and based on internally inconsistent testimony. At worst, the testimony relied on by the trial court and the State simply does not say what these parties assert

6

that it does. Under these circumstances, the Fourteenth Court of Appeals acted soundly in holding that the trial court's findings on these issues did not find support in the record. *Vasquez*, 453 S.W.3d at 569.

The issue of law enforcement's use of a two-step interrogation technique was preserved for appellate review because defense counsel raised the issue of voluntariness, coercion, and the withholding of *Miranda* warnings in two pre-trial motions to suppress. (C.R. at 54-57, 76-79). In addition, defense counsel extensively explored the issue of when the Appellant received his legal warnings during the hearing, and then lodged a specific oral objection and argued that the Appellant's recorded statement was the product of a "two-step interview." (4 R.R. at 105-106).

There seems to be little doubt that the Appellant was the subject of custodial interrogation prior to the start of his recorded statement. The trial court found as much in its written findings of fact. (Supp. C.R. at 25). In this instance, the trial court's finding has ample support in the record and the State has failed to point any evidence that could lead to the conclusion that the Appellant was not the subject of custodial interrogation.

Finally, because of the indelible nature of a defendant's recorded confession, combined with the jury's repeated viewing of the statement—it was played for the jury on three separate occasions: during its original publication, during the State's closing arguments, and at the request of the jury during its deliberations, (4 R.R. at 115; 5 R.R. at 101, 104; C.R. at 134)—it cannot be said that the statement's admission did

7

not contribute to the Appellant's conviction beyond a reasonable doubt. Tex. R. App. Proc. 44.2(a). While there was some evidence against the Appellant, it was far from overwhelming.

**ARGUMENT**

> **RESPONSE TO THE STATE'S FIRST ISSUE:** The Appellant's pre-trial motions alleging that *Miranda* warnings were withheld, combined with the subject matter explored at the hearing on the motion to suppress and defense counsel's oral objection complaining of a "two-step interview," preserved the *Seibert* issue for appellate review.[2]

Two pre-trial motions to suppress the Appellant's videotaped statement to police were filed. The first, entitled "Defendant's Motion to Suppress the Confession," was filed a year-and-a-half before trial and alleged that:

> Said confession was involuntary and was coerced and enticed from the Defendant. The Defendant was arrested around 11 a.m. and he didn't give a video statement until almost twelve hours later. **He was not given his Miranda warnings** and had requested an attorney. The officers persistently and coercively interviewed him and wore down his resistance and force[d] him to make a statement.
>
> [. . .]
>
> The Defendant was not given a warning of his constitutional and statutory rights as guaranteed by the United States Constitution and the Code of Criminal Procedure of the State of Texas by the person to whom the Defendant allegedly made the written/oral confession.

---

[2] The specific wording of the first issue granted for review by this Court is as follows: "The lower court's majority opinion erred in holding that the appellant preserved his two-step interrogation complaint for appellate review."

(C.R. at 54) (emphasis added). The second motion, entitled "Motion to Suppress Oral Statements," was filed thirteen days before trial and alleged that:

> It is alleged that your Defendant may have made oral statements after his arrest and the use of same on the trial of this matter is prohibited by the Texas Code of Criminal Procedure Article 38.22, Section 3.

> The defense submits that there has been a fact issue raised as to the voluntariness of an alleged oral statement made by the accused. In accordance with Article 38.22 of the Code of Criminal Procedure the Defendant will submit that the accused['s] alleged statement does not fall within any of the exceptions listed under that article.

(C.R. 76). The proposed orders on both motions contain handwritten notations from the trial court, stating that the motion "Will be heard outside jury but with trial," and "Will be heard outside of jury but after jury sworn in." (C.R. at 58, 79).

During the course of the suppression hearing, the issue of when the Appellant received *Miranda* warnings was consistently explored by defense counsel through both Detective Bolton and the Appellant. (4 R.R. at 86-92, 97-102). At the close of the suppression hearing, trial counsel for the defense made the following objection:

> And my next approach, Judge, is I'm contending this is a two-step interview. And because of the two-step interview, that they -- they interviewed him. And once they got him to say what they wanted him to say, they took him in and videoed him and gave his Miranda warning and he told the story again.

> And I'm suggesting under the existing case law, that's illegal and the statement should be suppressed.

(4 R.R. at 105-106). The trial court subsequently ruled that "Only the video statements are admissible. Statements that he made that were not videoed are not admissible in the State's case in chief." (4 R.R. at 106).

9

These facts combined lead the majority to correctly hold that the *Seibert* issue was preserved for appellate review. *Vasquez*, 453 S.W.3d at 566-67. This Court should affirm the majority's holding.

### A. Plain English Will Suffice To Preserve Error

It has long been the case in Texas jurisprudence that "Straightforward communication in plain English will always suffice," to preserve error. *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992). There are no hyper-technical requirements for preservation. *See Everitt v. State*, 407 S.W.3d 259, 263 (Tex. Crim. App. 2013).

Defense counsel stated in plain English the colloquial name for his objection and went on to describe with more specificity what it was. (4 R.R. at 105-106). In addition, the two pre-trial motions to suppress raised the issue of the voluntariness of the Appellant's videotaped statement and made the specific claim that *Miranda* warnings had been withheld. (C.R. at 54-55, 76-77). Per the requirements of Texas Rules of Appellate Procedure 33.1, defense counsel went on to receive an adverse ruling from the trial court, which ruled that the videotaped statement was admissible. (4 R.R. at 106).

### B. This Court Has Previously Held a *Seibert* Complaint Is Preserved For Appellate Review When a Motion To Suppress Raises the Issue Of Voluntariness And a Hearing Is Held On the Motion

The State does not address in its brief one of the most salient points made by the majority opinion on the issue of preservation. As noted by the majority, this Court has previously addressed the issue of preservation in the context of a *Seibert* vio-

10

lation in two unpublished opinions. *See Vasquez*, 453 S.W.3d at 565 n. 7. A brief review of these cases is instructive on the issue currently before this Court.

**a. The motion to suppress filed in *Hunt v. State*, which was held sufficient to preserve error, contains language almost identical to those filed in the present case**

In *Hunt v. State*, No. PD-0152-12, 2013 WL 3282973 (Tex. Crim. App. June 26, 2013) (not designated for publication), trial counsel for Hunt filed a motion to suppress that alleged "any statements made by [appellant] were involuntary and coerced and enticed from [appellant]," and that "'the statements made by [appellant] were tainted by the illegal and unlawful detention and arrest,' in violation of his rights under the United States and Texas Constitutions and Article 38.23 of the Texas Code of Criminal Procedure." *Id.* at *5. This Court also noted that at the hearing on Hunt's motion to suppress that counsel for Hunt "extensively questioned the officers" regarding the use of the unwarned statement to elicit the warned statement. *Id.* In the trial court's written findings of fact, the trial court noted that "the second confession is not so tainted as to make it inadmissible." *Id.* Finally, this Court found it telling that "The court of appeals recognized that appellant had raised a *Seibert* issue and cited to that case in its analysis in both its 2009 and 2011 opinions. Clearly, that court had notice of appellant's *Seibert* complaint in the context of the voluntariness issue." *Id.* (internal citations omitted).

The facts of *Hunt* are highly analogous to the Appellant's case. The pre-trial motions filed by defense counsel largely mirrored the language of the motion to sup-

press filed in *Hunt*. (C.R at 54-55, 76-77). At the hearing on the Appellant's motion to suppress, defense counsel questioned Detective Bolton and the Appellant about the timing of *Miranda* warnings, whether they were withheld, and the use of the unwarned and unrecorded statement to elicit the second warned and recorded statement. (4 R.R. at 86-92, 97-102). The trial court's written findings of fact on remand make findings directly relevant to a *Seibert* challenge.[3] (Supplemental C.R. at 25-26). And at no point before either of this case's two appearances before the Fourteenth Court of Appeals was there any confusion as to the nature of the claim the Appellant was raising on direct appeal. Both opinions from the Fourteenth Court of Appeals—and indeed, this Court's own opinion remanding the case to the trial court—conduct a review of the case law applicable to a *Seibert* challenge. *See Vasquez v. State*, 411 S.W.3d 918 (Tex. Crim. App. 2013); *Vasquez*, 453 S.W.3d at 563-565; *Vasquez v. State*, 397 S.W.3d 850, 854-57 (Tex. App.—Houston [14th Dist.] 2013, pet. granted). At no point during the proceedings before the appellate courts was there any confusion about the nature of the claim the Appellant was pursuing.[4] And indeed, there is no explicit indication in

---

[3] As the majority opinion notes, on remand the trial court "made no finding that it had not been aware of appellant's *Seibert* challenge at the time of the suppression hearing." *Vasquez*, 453 S.W.3d at 566 n. 9.

[4] It is worth noting that the State's preservation argument was not presented to the Fourteenth Court of Appeals on original submission or before this Court on the State's first Petition for Discretionary Review. *See Vasquez*, 411 S.W.3d 918; *Vasquez*, 397 S.W.3d 850. The State's claim that error was not preserved was raised for the first time two days before oral argument before the Fourteenth Court of Appeals in a supplemental brief. *See Vasquez*, 453 S.W.3d at 565; Case Detail, Fourteenth Court of Appeals, No. 14-12-00096-CR, http://www.search.txcourts.gov/Case.aspx?cn=14-12-

the record from either the trial court or a representative of the State appearing before the trial court that there was confusion about the nature of the Appellant's objection.

Although *Hunt* is not binding on this Court as it was an unpublished opinion, its reasoning remains sound. *See* Tex. R. App. Proc. 47.7(a); *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd) ("The effect of the rule is to afford parties more flexibility in pointing out such opinions and the reasoning employed in them rather than simply arguing, without reference, that same reasoning."). As was the case in *Hunt*, this Court should again hold that the Appellant's challenge to the use of a two-step interrogation was preserved due to the factual and procedural similarities of the cases.

> **b. In holding that error was not preserved, this Court previously advised in *Batiste v. State* that language similar to what defense counsel said at the motion to suppress hearing would preserve error for appellate review of a *Seibert* claim**

The majority opinion notes that this Court held in *Batiste v. State*, No. AP-76,600, 2013 WL 2424134 (Tex. Crim. App. June 5, 2013) (not designated for publication), that a *Seibert* issue was not preserved for appeal, but that the Appellant's case does not bear a close resemblance to the situation seen in *Batiste*. *See Vasquez*, 453 S.W.3d at 565 n. 7. In *Batiste*, this Court noted that the appellant "did not make any

---

00096-CR&coa=coa14 (last visited June 23, 2015) (noting that the State's supplemental brief was filed on September 23, 2014, while oral arguments were held and the case submitted on September 25, 2014).

13

reference to *Seibert*, *Carter*, 'two-step questioning,' 'question first, warn later,' or any other argument that might raise an issue under Seibert." *Batiste*, 2013 WL 2424134, at *16. This Court also noted that no claim of involuntariness "under the Fifth or Sixth Amendments or under Article 38.22," were presented on appeal. *Id.* at *16 n. 94.

From this language in *Batiste*, it appears this Court may have held that the *Seibert* claim was preserved if trial counsel had been more specific with his objection. Such a situation now presents itself to this Court in the present case, as trial counsel objected and used the phrase "two-step interview" and explained what he meant by that term of art. (4 R.R. at 105-106). Additionally, the first pre-trial motion to suppress filed by defense counsel specifically noted that his objection was based in part on the allegation that the Appellant "was not given his *Miranda* warnings," and that he "was not given a warning of his constitutional and statutory rights as guaranteed by the United States Constitution and the Code of Criminal Procedure of the State of Texas by the person to whom the Defendant allegedly made the written/oral confession." (C.R. at 54-55). Defense counsel's oral objection to the trial court and written motion to suppress are thus not the "global" arguments that "contained little more than citations to constitutional and statutory provisions," that this Court has previously held are insufficient to preserve error. *Swain v. State*, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005).

14

### c. The civil case law relied on by the State is not applicable to the present case and is factually distinguishable

In arguing that the Appellant's pre-trial motions and oral objections were not sufficient to preserve error, the State cites in its brief to the civil case[5] of *Phillips v. Bramlett*, 288 S.W.3d 876 (Tex. 2009). (State's brief at 17-18). According to the Texas Supreme Court, the objection made by trial counsel "*without more*, did not preserve error in this case." *Id.* at 883. (emphasis added). But in the Appellant's case, there was substantially more than an imprecise one-sentence objection.

As previously detailed, there were two pre-trial motions to suppress which specifically asserted that the Appellant had been denied his *Miranda* warnings, that the Appellant's videotaped statement was the product of coercion, and that the Appellant's statement was not voluntarily made. (C.R. at 54-55, 76-77). The question of whether the Appellant had received *Miranda* warnings from other officers prior to the videotaped statement was a subject broached by defense counsel when cross-examining Detective Bolton. (4 R.R. at 87-88). The Appellant's testimony on direct examination described a near-text book example of a two-step interrogation, with the Appellant testifying that the first time he received his *Miranda* warnings was "After I confessed." (4 R.R. at 97-98). To cap everything off, defense counsel stated with

---

[5] As this Court is undoubtedly aware, the Texas Constitution explicitly states that the Texas Supreme Court has no appellate jurisdiction over criminal law matters. *See* Tex. Const. Art. V § 3(a) ("[The Texas Supreme Court's] jurisdiction shall be coextensive with the limits of the State and its determinations shall be final except in criminal law matters. Its appellate jurisdiction shall be final and shall extend to all cases except in criminal law matters and as otherwise provided in this Constitution or by law.").

specificity that he was objecting to the interview as the product of an illegal "two-step interview." (4 R.R. at 105-106). Needless to say, the single sentence objection at issue in *Phillips* is a far cry from the situation at issue in the Appellant's case.

## C. The State Bears the Burden Of Establishing the Admissibility Of the Appellant's Statement And Compliance With *Miranda* After the Appellant Carried His Burden Of Showing the Statement Was the Product of Custodial Interrogation

The dissent asserts—and the State in its brief seemingly agrees (State's brief at 18-19)—that *Martinez v. State*, 272 S.W.3d 615, 623-24 (Tex. Crim. App. 2008), stands for the proposition that the State's burden proving admissibility "does not arise unless the defendant first timely presents to the trial court a complaint that the police deliberately employed a 'question first, warn later' interrogation technique." *Vasquez*, 453 S.W.3d at 578 (Frost, C.J., dissenting). The Appellant must respectfully disagree with the dissent's interpretation of *Martinez* in this regard.

This Court stated in *Martinez* that "The state, as the proponent of the evidence of appellant's confession, bears the burden of establishing its admissibility. Further, we have long held that the prosecution bears the burden of proving admissibility when a *Miranda* violation is found." *Martinez*, 272 S.W.3d at 623 (internal citations omitted). In his concurring opinion, Judge Price noted that "Once a defendant has shown that his statement was made as a result of custodial interrogation, the State has the burden to establish compliance with *Miranda*." *Id.* at 627-28 (Price, J., concurring). Even Judge Hervey's dissent in *Martinez* seemingly agrees with the procedural frame-

16

work of the majority's opinion—that the "heavy burden" to show compliance with *Miranda* shifts to the State once the defense satisfies an initial showing—but disagrees that the initial showing was met by Martinez in that particular case. *Id.* at 643 (Hervey, J., dissenting).

The shifting burden can therefore be summarized as follows: the defense carries the initial burden to show "that the setting is one of custodial interrogation"; the burden then shifts to the State "to establish that *Miranda* warnings were given and that the defendant voluntarily waived those rights and voluntarily responded to custodial questioning." *Herrera v. State*, 241 S.W.3d 520, 533-34 (Tex. Crim. App. 2007) (Cochran, J., concurring). What the dissent in the present case proposes—that the State's burden to show compliance with *Miranda* in the context of a *Seibert* violation does not arise until the talismanic phrase "question first, warn later" is uttered—is therefore a departure from what this Court held in *Martinez*.

Applying the shifting burden generally applied to *Miranda* violations and reaffirmed in *Martinez* reveals the following: the Appellant met his initial burden to establish that his both his recorded and unrecorded statements were the product of custodial interrogation in two ways. First, Detective Bolton testified that the Appellant was arrested earlier in the day, was in custody, and was not free to leave.[6] (4 R.R. at 81).

---

[6] It is unclear whether Detective Bolton is referring to the Appellant being in custody and not free to leave for the videotaped statement only, or both the videotaped statement and the unrecorded statement. The trial court later entered a written finding of fact determining that "the defendant's

Second, the Appellant himself testified that he had been placed under arrest, transported directly to the homicide office, was continuously held in the same room at the homicide office, and was not read his *Miranda* rights until after he made an incriminating statement. (4 R.R. at 95-99). Once the defense successfully carried its burden to demonstrate that the Appellant's statement was the product of custodial interrogation, the burden then shifted to the State to show compliance with *Miranda*. *Martinez*, 272 S.W.3d at 623-24.

But rather than present any further evidence or testimony[7] to meet its "heavy burden" to show compliance with *Miranda*—which would necessarily include demonstrating that the protections of *Miranda* were not intentionally subverted through a two-step interrogation technique by withholding *Miranda* warnings until the Appellant

---

original, unrecorded interview was custodial in nature." (Supp. C.R. at 25). Even assuming that Detective Bolton's testimony can be read to apply only to the videotaped statement, there is other testimony which would lead to the conclusion that the Appellant's unrecorded statements were also the product of custodial interrogation. Specifically, the fact that the Appellant was arrested pursuant to a warrant and was in continuous custody from that point on, (4 R.R. at 36, 39, 64-65, 72, 76), was transported directly to the homicide office where the interview occurred following his arrest, (4 R.R. at 77, 81), had been interviewed by at least two other law enforcement officers prior to Detective Bolton's interviews, (4 R.R. at 86, 89-90), and that Detective Bolton had conducted an unrecorded interview with the Appellant immediately prior to the recorded interview. (4 R.R. at 91-92).

[7] Investigator Padilla, one of the other members of law enforcement who conducted unrecorded interviews with the Appellant, was present in court on the day of the motion to suppress hearing and was available to testify. In fact, Investigator Padilla was in the court during the State's direct examination and for a portion of defense counsel's cross-examination of Detective Bolton. It was not until defense counsel broached the topic of whether Detective Bolton heard or saw Investigator Padilla's unrecorded interview with the Appellant that the State informed the trial court of Investigator Padilla's presence in the court's gallery. After being informed of Padilla's presence, the trial court asked him to step outside of the courtroom in the event that he was called as a witness. (4 R.R. at 86-87).

made incriminating statements, as the Appellant's testimony alleged—the State did not seek to call any other witnesses, introduce any other evidence, and agreed to proceed directly to arguments. (4 R.R. at 103-109). After receiving a favorable ruling from the trial court, (4 R.R. at 106), the State did not seek to reopen the motion to suppress hearing. The Appellant should not be faulted for not prodding the State to meet its heavy burden to show compliance with the requirements of *Miranda*, particularly after the issue of voluntariness was twice raised in pretrial motions, (C.R. at 54-55, 76-77), the withholding of *Miranda* warnings was explored during the cross-examination of both Detective Bolton and the Appellant during the hearing, (4 R.R. at 87-88, 97-102) and a specific oral objection was made by defense counsel. (4 R.R. at 105-106).

### D. Defense Counsel's Pre-Trial Motions And Oral Objection Were Sufficient To Put the Trial Court and the State On Notice As To the Nature of the Complaint

Under the test this Court set forth in *Lankston*, 827 S.W.2d at 909, an objection preserves error if it is "sufficiently clear to provide the trial judge and opposing counsel an opportunity to address and, if necessary, correct the purported error." *Ford v. State*, 305 S.W.3d 530, 533 (Tex. Crim. App. 2009). In addition, "the context in which the complaint was made and the parties' understanding of the complaint at the time," must also be taken into consideration. *Id.*

To establish the context of what the hearing on the motion to suppress was litigating, the written pre-trial motions make the subject matter immediately apparent.

19

In the defense's pre-trial motions to suppress, several references were made to the failure of law enforcement to properly Mirandize the Appellant. In the Defendant's Motion to Suppress the Confession, defense counsel claimed that "He was not given his Miranda warnings," "The officers persistently and coercively interviewed him and wore down his resistance and force[d] him to make a statement," and that "The Defendant was not given a warning of his constitutional and statutory rights as guaranteed by the United States Constitution and the Code of Criminal Procedure of the State of Texas by the person to whom the Defendant allegedly made the written/oral confession." (C.R. at 54-55). Therefore, both the State and the trial court were put on notice that the defense sought to litigate whether the Appellant had been properly Mirandized, whether *Miranda* warnings had been withheld, and whether the Appellant's statement was made voluntarily or was the product of coercion.

### a. The trial court's ruling makes sense in the context of a *Seibert* objection made during an Article 38.22 hearing in light of the pre-trial motions to suppress

A large part of the State's argument that error was not preserved rests on the assumption that "the trial court did not understand the nature of the objection." (State's brief at 14). The State argues that the trial court's ruling does not make sense in the context of a *Seibert* motion. (State's brief at 16). But it is clear from the context of the trial court's ruling that defense counsel's *Seibert* objection was overruled and that the Appellant was receiving at least some of the relief sought in his pre-trial motions to suppress.

20

### i. The trial court's ruling indicated that defense counsel's *Seibert* objection was overruled and that the unrecorded oral statements would be suppressed, the latter of which is part of what the Appellant sought in his second motion to suppress

The trial court's ruling notes that "Only the video statements are admissible. Statements that he made that were not videoed are not admissible in the State's case in chief." (4 R.R. at 106). In addition, the trial court states that "I guess what I'm doing is I'm granting your motion in part." *Id.* It is apparent that the "part" that the trial court was granting was the suppression of the unrecorded oral statements, which were objected to in defense counsel's pre-trial motion to suppress. (C.R. at 76).

Specifically, the second motion to suppress filed by defense counsel is titled "Motion to Suppress Oral Statements," indicating that there are multiple oral statements that defense counsel sought to suppress and not just the videotaped statement. The body of this motion further clarifies that this is the case. The motion states that it is seeking to suppress "any and all oral statements made by the Defendant," and that the Appellant "may have made oral statements after his arrest and the use of same on the trial of this matter is prohibited by Texas Code of Criminal Procedure, Article 38.22, Section 3." (C.R. at 76). This allegation is contained in a separate paragraph from the portion of the motion that seeks to suppress the videotaped statement. There were therefore two things that defense counsel sought to suppress: 1) the unrecorded oral statements made by the Appellant; and 2) the videotaped interview. And the trial court specifically stated that it was "granting your *motion* in part,"

21

(4 R.R. at 106), further solidifying the fact that the trial court was ruling on the motion to suppress and not specifically responding to defense counsel's *Seibert* objection.

It cannot be presupposed that the mere existence of Article 38.22 and its ban on the use of unrecorded oral statements would have prevented the State from attempting to introduce or elicit testimony about those statements at trial. It was incumbent on defense counsel to object and attempt to suppress the unrecorded statements, which is precisely what he did.

While the trial court does not explicitly say that it is overruling defense counsel's "two-step interview" objection, it was implicitly overruled by the fact that the trial court ruled the videotaped statement was admissible. *See* Tex. R. App. Proc. 33.1(a)(2)(A) (error is preserved if the trial court "ruled on the request, objection, or motion either expressly or *implicitly*") (emphasis added). Viewed through the prism of defense counsel's second motion to suppress, the trial court's ruling does indeed make sense.

  ii. **Because *Seibert* deals with a statement's voluntariness, an Article 38.22 hearing is the appropriate and only vehicle available to a defendant through which a *Seibert* challenge can be explored and raised**

The State proposes that the Appellant's pre-trial motions to suppress raising the issue of voluntariness and requesting an Article 38.22 hearing in combination with the defense counsel's use of the term "two-step interview," (4 R.R. at 105-106), must now be parsed as raising two separate issues. But the core concern of *Seibert* is the ef-

22

fect on the voluntariness of a defendant's statement caused by the withholding of *Miranda* warnings. This means any objection to the use of a two-step interrogation technique must necessarily involve an Article 38.22 hearing contesting the voluntariness of a statement. *See Vasquez*, 411 S.W.3d at 919 ("This undermines *Miranda's* primary purpose: to guarantee that confessions are voluntary.") (citing *Seibert*, 542 U.S. at 608, 617). And on this case's first appearance before this Court, there seemed to be no question that a *Seibert* challenge is appropriately raised through an Article 38.22 hearing. *Vasquez*, 411 S.W.3d at 919-20 ("In *Missouri v. Seibert,* a fractured Supreme Court held that *Miranda* was violated, because the confession was involuntary, when police used a 'question first, warn later' interrogation technique. . . We have held that if a statement is involuntary as a matter of federal constitutional law, it is also involuntary for purposes of article 38.22. This, essentially, means that the requirement for 38.22 findings applies whenever there is a challenge to a statement's voluntariness.").

There is simply no other procedural mechanism available to a defendant to raise a *Seibert* challenge other than through an Article 38.22 hearing. The State's proposal of parsing the Appellant's objection into separate voluntariness and *Seibert* challenges is therefore precisely the sort of "hyper-technical analysis" that this Court has repeatedly rejected. *See Bekendam v. State*, 441 S.W.3d 295, 301 (Tex. Crim. App. 2014) ("[I]t would be error to distinguish 'between admissibility based on relevance and admissibility based on reliability. Under Rule 702 and our precedent, both relevance and reliability of the expert testimony are components of a trial court's *Daubert/Kelly* ruling

23

on admissibility.' We additionally stated that the 'parsing of appellant's objections is the kind of hyper-technical analysis that we have repeatedly rejected.'") (quoting *Everitt v. State*, 407 S.W.3d 259, 263 (Tex. Crim. App. 2010)).

The State thus misses the mark when it asserts that "the trial court's response showed that it mistakenly believed that the appellant was still objecting based on Article 38.22." (State's brief at 18). Because defense counsel was asserting that the Appellant's statement was involuntary as a matter of federal constitutional law pursuant to *Seibert*, he necessarily was also asserting that it was involuntary under Article 38.22. *See Vasquez*, 411 S.W.3d at 920 ("We have held that if a statement is involuntary as a matter of federal constitutional law, it is also involuntary for purposes of article 38.22."); *Oursbourn v. State*, 259 S.W.3d 159, 169 (Tex. Crim. App. 2009) ("A statement that is 'involuntary' as a matter of constitutional law is also 'involuntary' under Article 38.22, but the converse need not be true.").

### b. The State had the option to request that the trial court reopen testimony on the motion to suppress, but did not do so

The trial court has discretion to reopen and supplement evidence in a hearing on a motion to suppress. Indeed, if the prosecutor at trial had any doubt about whether the evidence the State had presented at the motion to suppress would carry its burden, the State could and should have requested that the trial court reopen the hearing on the Appellant's motion to suppress. In *Black v. State*, 362 S.W.3d 626 (Tex. Crim. App. 2012), such a scenario played out. After the trial court had denied the de-

24

fense's motion to suppress following a hearing, the State began to present testimony as part of its case-in-chief. In the midst of its case-in-chief, the State requested that the trial court "re-open, supplement, whatever the case may be, the motion to suppress, for the record that you're able to consider so that it properly shows the truth and the facts in this case." *Id.* at 629. The State was then permitted by the trial court to present testimony from another witness on the defense's motion to suppress. On review before this Court, it was held that trial courts have "the discretionary authority to reopen the hearing on the appellant's motion to suppress evidence, even mid-trial, to allow the State to present additional evidence in support of the trial court's initial, interlocutory ruling to deny the motion." *Id.* at 635.

Thus, the State in the present case could have requested the opportunity to re-open testimony on the Appellant's motion to suppress, but chose not to.[8] The dissent's argument that trial counsel for the defense's objection was untimely and therefore "did not allow the trial court or the State the opportunity to remove the basis for the objection or to correct the alleged error," is incorrect. *Vasquez*, S.W.3d at 578 (Frost, C.J., dissenting). Rather, the State had the opportunity to correct the alleged error by requesting that the trial court reopen testimony on the suppression hearing. However, the State made no attempt to avail itself of this opportunity.

---

[8] This fact was noted by the majority: "We find the State's complaint that this objection was not raised until 'closing argument at the suppression hearing' to be inconsequential. At that point in the hearing, the State could have requested to put on more evidence regarding this issue, but it did not do so." *Vasquez*, 453 S.W.3d at 566 n. 9.

### E. The Majority Was Correct In Holding That Error Was Preserved

In sum, the majority was correct in holding that the Appellant's *Seibert* issue was preserved for review. *Vasquez*, 453 S.W.3d at 567. The Appellant respectfully prays that this Court affirms the majority's opinion.

> **RESPONSE TO THE STATE'S SECOND ISSUE:** The trial court's written findings of fact explicitly state that the Appellant was subject to custodial interrogation prior to receiving and waiving his *Miranda* warnings on the recorded statement.[9]

Per the order of this Court, the trial court entered written findings of fact addressing four specific questions. *Vasquez*, 411 S.W.3d at 920. The first of these four questions asked the trial court to determine "whether the original, unrecorded interview was custodial in nature." *Id.* In complying with this Court's order, the trial court stated in its written findings of fact "that the defendant's original, unrecorded interview was custodial in nature." (Supp. C.R. at 25). This finding was acknowledged by the majority's opinion.[10] *Vasquez*, 453 S.W.3d at 563. The majority further noted that "[I]t is undisputed that appellant was in custody when he made his statements."[11] *Id.* at 571.

---

[9] The specific wording of the second issue granted for review by this Court is as follows: "The lower court's majority opinion erred in holding that the appellant was subject to custodial interrogation prior to receiving and waiving his legal rights."

[10] Chief Justice Frost's dissenting opinion addresses only the preservation issue and does not find fault with any other aspect of the majority's opinion. *See Vasquez*, 453 S.W.3d at 577-580 (Frost, C.J., dissenting).

[11] The Appellant must point out that the State's brief on this case's second appearance before the Fourteenth Court of Appeals does indeed dispute whether the Appellant was subject to custodial

### A. The Appellant Was Under Arrest, Held In the Homicide Office, And Subjected To Questioning By Law Enforcement Prior To His Videotaped Statement

Even if this Court does not hold that the trial court's written finding of fact is immediately dispositive of this issue, the record is replete with evidence that leads to the conclusion the Appellant was subject to custodial interrogation prior to his videotaped statement. To begin with, the Appellant was arrested by an officer with the Houston Police Department pursuant to a warrant. (4 R.R. at 62-74). Immediately after his arrest, the Appellant was transported to the homicide office. (4 R.R. at 73-74). Because the Appellant was the subject of a formal arrest, his Fifth Amendment protections were triggered and he was entitled to *Miranda* warnings. *See Gardner v. State*, 306 S.W.3d 274, 293-94 (Tex. Crim. App. 2009), cert. denied, 131 S.Ct. 103 (2010). At no time during the suppression hearing or the body of the trial did any law enforcement officer who testified define the Appellant's status as anything less than custodial.

There is no controversy that the Appellant was questioned by several detectives before the recorded statement, as it is a fact both Detective Bolton and the Appellant testified to. Specifically, Detective Bolton testified that two other law enforcement officers—Sergeant Padilla and Detective Evans—had been interviewing the Appel-

---

interrogation. However, on this case's original submission to the Fourteenth Court of Appeals, the State conceded that the Appellant was in custody. *See Vasquez*, 397 S.W.3d 850 at 857 n. 10 ("The State argued otherwise in its brief but admitted during oral argument that appellant was in custody for purposes of *Miranda*.").

lant, the co-defendant, and a witness. (4 R.R. at 86). Immediately before Detective Bolton entered the interrogation room at approximately 10:00 p.m., Sergeant Padilla had concluded his own separate interview of the Appellant, although the record is devoid of information regarding their discussion. (4 R.R. at 90). Regarding Detective Bolton's interview of the Appellant, there is no doubt that the deaths of the complainants were discussed at some point, as Detective Bolton testified that both the Appellant and the co-defendant initially denied any involvement. (4 R.R. at 87). Perhaps most importantly, information that the Appellant provided before the videotape begins is referred to several times on the recorded statement. Detective Bolton agreed that he repeated questions on the videotape that he had asked in the unrecorded interview to facilitate the Appellant's recorded confession. (4 R.R. at 92).

The Appellant's own testimony bolsters the conclusion that he was subjected to custodial interrogation. According to the Appellant, four officers in total came through the interview room to speak with him, including Detective Bolton. (4 R.R. at 97). The moment when the Appellant finally agreed to deliver a confession occurred off-camera when Detective Bolton stated to the Appellant that he had to provide some sort of statement if he wanted to avoid the death penalty. (4 R.R. at 99-100).

**B. The State Has Not Preserved This Claim For Appellate Review**

Because the trial court found that the Appellant was subject to custodial interrogation prior to his recorded statement, the State is actually taking issue with the action of the trial court, rather than with the decision of the Fourteenth Court of Ap-

peals. Arguably, the State could be procedurally entitled to appeal the trial court's finding that the Appellant was subject to custodial interrogation prior to his recorded statement. *See* Tex. Code Crim. Proc. art. 44.01(c) ("The state is entitled to appeal a ruling on a question of law if the defendant is convicted in the case and appeals the judgment."). However, the record does not demonstrate that the State lodged an objection to the trial court's written findings of fact in any respect. Therefore, the State's claim that the trial court erred in finding that the Appellant was subject to custodial interrogation, and that the Court of Appeals subsequently erred in adopting this finding, is not preserved for appellate review. *See* Tex. R. App. Proc. 33.1(a)(1); *State v. Mercado*, 972 S.W.2d 75, 78 (Tex. Crim. App. 1998) ("Ordinary notions of procedural default should apply equally to the defendant and the State. . . [T]he basic principle of appellate jurisprudence that points not argued at trial are deemed to be waived applies equally to the State and the defense.").

## C. The Majority Correctly Held That the Appellant Was the Subject of Custodial Interrogation

The State has pointed to nothing in the record that would lead to the conclusion that the Appellant was not the subject of custodial interrogation prior to his recorded statement. On the merits of this point of error, this Court should affirm the opinion of the Fourteenth Court of Appeals. Alternatively, this Court should hold that the State has procedurally defaulted this claim.

**RESPONSE TO THE STATE'S THIRD ISSUE:** The record is devoid of evidence showing the Appellant received *Miranda* warnings prior to the start of the videotaped statement, and the State failed to carry its burden demonstrating that a two-step interrogation technique was not deliberately used.[12]

The majority correctly held that the record demonstrated that a two-step interrogation was deliberately employed by law enforcement in interviewing the Appellant. *Vasquez*, 453 S.W.3d at 567-73. At best, Detective Bolton's initial testimony is confusing and unclear. But a plain reading of the record reveals that there is no evidence or testimony to support the trial court's finding that the Appellant received *Miranda* warnings at any time prior to the start of the videotaped statement.

The indicators that a two-step interrogation method was deliberately employed by law enforcement are apparent in the present case. Detective Bolton is an experienced peace officer who was aware of the need for *Miranda* warnings. (4 R.R. at 91-92, 109-11). There was significant overlap between the pre-warning statement and the post-warning statement per Detective Bolton's own admission. (4 R.R. at 92). The statements were separated by a short break lasting only long enough for Detective Bolton to visit the restroom. (4 R.R. at 91-92). And finally, none of the numerous curative measures that might save an otherwise inadmissible statement were employed by law enforcement. *Vasquez*, 453 S.W.3d at 573-575.

---

[12] The specific wording of the third issue granted for review by this Court is as follows: "The lower court's majority opinion erred in holding that a two-step interrogation technique was deliberately employed by the police."

### A. The Trial Court's Findings Are Not Entitled To Deference When They Are Not Supported By the Record

Although the trial court's written findings of fact state that Detective Bolton observed Sergeant Padilla administer *Miranda* warnings to the Appellant prior to the start of the recorded interview, there is no evidence in the record to support this finding. (Supp. C.R. at 23). No matter how much the State may insist that Detective Bolton testified that he witnessed Sergeant Padilla read the Appellant his *Miranda* warnings, this testimony is simply not present in the record.[13] (4 R.R. at 87; States brief at 20). On the contrary, there is clear, straightforward, and conclusive testimony from Detective Bolton establishing that he did not see any portion of Sergeant Padilla's interview with the Appellant, a fact which was noted in the majority's opinion. (4 R.R. at 89-90); *Vasquez*, 453 S.W.3d at 56-68. This later clearer testimony renders any finding that Detective Bolton witnessed Sergeant Padilla interviewing the Appellant implausible on its face and based on internally inconsistent testimony. *See Carter v. State*, 309 S.W.3d 31, 38-39 n. 39 (Tex. Crim. App. 2010). The findings of the trial court in this regard are therefore not entitled to any deference and constitute clear error. *See, e.g., Miller v. State*, 393 S.W.3d 255, 263 (Tex. Crim. App. 2012); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

---

[13] Because this portion of Detective Bolton's testimony is critical to the resolution of this case, it is reproduced below:

> Yes, I was there. I was in the monitoring room. When they entered the room, you know, they read the defendant - - and when they interviewed Mr. Martinez, they also read him his legal warnings as well.

### a. The trial court's findings did not turn on a credibility determination, as there is no evidence in the record to support the finding that the Appellant received off-camera *Miranda* warnings

Because Detective Bolton did not testify that he had observed the Appellant receive *Miranda* warnings from Sergeant Padilla and the Appellant testified that he had not received *Miranda* warnings until the start of the videotaped statement, there is no controversy to resolve with a credibility determination. (4 R.R. at 87-90, 97-98). The trial court was free to find that the entirety of Detective Bolton's testimony was completely credible and that the Appellant's testimony was not credible at all. *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2008). And indeed, the trial court did precisely that in its written findings of fact. (Supp. C.R. at 22-25). But this does not change the content of the testimony elicited at the hearing. Either Detective Bolton testified that he witnessed Sergeant Padilla read the Appellant his *Miranda* warnings, or he did not. The only testimony that the State can point to in this regard is so opaque that it is rendered meaningless, (4 R.R. at 87), particularly in light of the later testimony Detective Bolton gave only moments later that leaves no room for doubt he did not witness any part of Sergeant Padilla's interview of the Appellant. (4 R.R. at 89-90); *Vasquez*, 453 S.W.3d at 568. Even reviewing Detective Bolton's testimony in the light most favorable to the trial court's findings, his testimony remains internally inconsistent and incoherent. Under these circumstances, a court of appeals is permitted to

find that the trial court's findings are clear error, even if the trial court attributes the findings to a credibility determination.[14]

The State takes the position that the Fourteenth Court of Appeals held that there was "'indisputable' evidence to the contrary of the trial court's findings." (State's brief at 19). But this is in fact not the case. Rather, the majority held that "the trial court's finding that appellant received his *Miranda* warnings before making incriminating statements is not supported by the record. To the contrary, the State failed to present evidence that appellant received such warnings." *Vasquez*, 453 S.W.3d at 569 (emphasis added). Indeed, the majority confirms that this wording was intentional, as it repeated this holding in a footnote, stating "we conclude the State did not present evidence of when the original warnings were given and thus whether it was before Bolton elicited the first confession." *Id.* at 575 n. 16. The Fourteenth Court of Appeals was under not under the impression that the type of indisputable video evidence presented in *Carmouche v. State*, 10 S.W.3d 323 (Tex. Crim. App. 2000), was present in this case. Rather, the problem in the Appellant's case—as made clear by the majority's

---

[14] *See Anderson v. Bessemer City*, 470 U.S. 564, 575 (1985) ("This is not to suggest that the trial judge may insulate his findings from review by denominating them credibility determinations, for factors other than demeanor and inflection go into the decision whether or not to believe a witness. Documents or objective evidence may contradict the witness' story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it. Where such factors are present, the court of appeals may well find clear error even in a finding purportedly based on a credibility determination. But when a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error.").

holding on this issue—was that the record was devoid of evidence to support the trial court's findings on this issue, not that there was a contradiction in evidence. *See Carmouche*, 10 S.W.3d at 332 ("[T]he videotape presents indisputable visual evidence contradicting essential portions of Williams' testimony."). And as detailed previously, the majority's conclusion in this regard is well founded.

### b. The trial court made no findings as to Detective Bolton's testimony that he learned about the Appellant's unrecorded interview directly from Sergeant Padilla

It is worth briefly mentioning that in the trial court's written findings of facts, the trial court finds "that any statements indicating that Padilla had not given the defendant his legal warnings prior to questioning him are not credible." (Supp. C.R. at 23). Unlike most of the other paragraphs in the findings of fact, there is no citation to any part of the record. This is notable because there is no testimony or other evidence in the record that specifically states Sergeant Padilla had or had not given the Appellant his legal warnings. The record is entirely silent in this regard. Instead, what the record does contain is testimony from Detective Bolton where he states he did not witness any part of Sergeant Padilla's interview with the Appellant, which logically leads to the conclusion that he did not observe Sergeant Padilla deliver *Miranda* warnings. (4 R.R. at 89-90). Further, the information Detective Bolton testified to regarding his knowledge of Sergeant Padilla giving *Miranda* warnings to Martinez—the co-defendant who was also being interviewed at the homicide offices—was relayed to

34

him by Sergeant Padilla and Investigator Evans through conversation and was not obtained through the viewing of the interview in the monitoring room. (4 R.R. at 90).

The trial court's written findings make no explicit mention of Detective Bolton's later testimony stating that he did not monitor the interview and makes no determination as to the credibility of this testimony. (4 R.R. at 89-90). Instead, the written findings cite to the earlier unclear testimony of Detective Bolton for the proposition that he had "monitored the interview," a finding which this testimony does not support. [15] (Supp. C.R. at 23; 4 R.R. at 87). And to reiterate, the Fourteenth Court of Appeals agreed with this interpretation of Detective Bolton's testimony by holding that "the State failed to present evidence that appellant received such warnings." *Vasquez*, 453 S.W.3d at 569.

## B. The Burden To Show a Two-Step Interrogation Was Not Deliberately Employed Falls On the State, And the State Failed To Carry Its Burden

A review of a trial court's determination as to whether law enforcement deliberately used a two-step interrogation turns not only on the officer's testimony, but also on the surrounding circumstances. *Carter*, 309 S.W.3d at 39. Because Detective Bol-

---

[15] Defense counsel had just asked Detective Bolton "And when any other officers read them their Miranda warnings, you don't know or if they were read at all 'cause you weren't there?" Detective Bolton responded "Yes, I was there. I was in the monitoring room." (4 R.R. at 87). Detective Bolton makes no mention of whether he had monitored the interview and states only that he was *present* in the monitoring room. This answer makes sense in light of defense counsel's question as to whether Detective Bolton was there at the homicide offices, particularly in light of earlier testimony Detective Bolton delivered explaining that he was not assisting with the Appellant's case until after the Appellant had been in the homicide offices for several hours at 5:15 p.m. and that he "was leaving at 5:00 o'clock." (4 R.R. at 85-88).

ton did not directly testify as to his subjective intent, the only method by which a determination can be made as to whether a two-step interrogation was deliberately used is to examine the totality of the circumstances surrounding the Appellant's interrogation. *Id.*

As the majority correctly noted, the burden falls on the State as the proponent of the evidence to demonstrate that the statement is admissible. And as also noted by the majority, as part of proving the statement's admissibility, the State carries the burden of showing that a two-step interrogation technique was not deliberately employed. *Vasquez,* 453 S.W.3d at 570 (citing *Martinez,* 272 S.W.3d at 623-24). The majority also points out that other jurisdictions have placed this same burden on the government to prove that the two-step interrogation technique was not deliberately employed. *Id.* at 570 n. 12. On this issue, the State again failed to carry its burden by producing no evidence to show that law enforcement was not deliberately employing the "gamesmanship" of a two-step interrogation. *See Carter,* 309 S.W.3d at 41.

The sole piece of evidence in the record that the State now points to in attempting to show that a two-step interrogation tactic was not deliberately used is Detective Bolton's reference to rapport building with the Appellant. (State's brief at 23; 4 R.R. at 88; Supp. C.R. at 25-26). But the State's reliance on this testimony is misplaced, as Detective Bolton's testimony regarding rapport building did not have anything to do with explaining a delay in administering *Miranda* warnings. Instead, Detective Bolton was responding to a question from defense counsel asking "Why don't

36

you audio the whole thing?" (4 R.R. at 88). In fact, defense counsel explicitly removes the presence or absence of *Miranda* warnings from the equation in the run up to this question by prefacing his question by saying "And if it comes to a point *whether the Miranda warnings were read or not*, y'all talked to him for almost eight hours and then all the sudden decide to start audio." *Id.* (emphasis added). The majority's opinion held that under the circumstance of this question, it was apparent that Detective Bolton's reference to rapport building addressed only the issue of why the Appellant's eight hour stay in the homicide offices produced a recording consisting of less than half-an-hour and did not explain the delay in delivering *Miranda* warnings in any way. *Vazquez*, 453 S.W.3d at 572. A plain reading of the record supports the holding of the majority on this issue.

In its brief, the State relies on the same two foreign jurisdiction cases for the proposition that rapport building is a permissible reason to delay *Miranda* warnings that the Fourteenth Court of Appeals distinguished from the circumstances of the present case. *Vasquez*, 453 S.W.3d at 572-73. (State's brief at 23). While the analysis of the Fourteenth Court of Appeals in this regard is entirely legally sound and the cases cited by the State are certainly distinguishable in significant ways, there is one aspect to the majority's analysis that the Appellant would add. Specifically, the majority's opinion notes that the record is silent as to what subjects were discussed during the Appellant's unrecorded interviews. *Vasquez*, 453 S.W.3d at 573. And while this is mostly the case in that the specific questions and answers from these unrecorded in-

37

terviews are not in the record, there is evidence that demonstrates Detective Bolton questioned the Appellant about the deaths of the complainants during the unrecorded interviews. For example, Detective Bolton testified that the Appellant initially stated that he was not involved in the incident and did not know what Detective Bolton was talking about. (4 R.R. at 87). Further, Detective Bolton confirmed that he was asking the Appellant to repeat certain information and incriminating statements that the Appellant had provided to him during their unrecorded interview once the video recording began. (4 R.R. at 92). It is reasonable to conclude from this information that Detective Bolton asked at least some questions to the Appellant about the deaths of the complaints, outside of whatever rapport building that was going on. Outside of this small aspect, the majority was correct to distinguish the cases cited by the State. *Vasquez*, 453 S.W.3d at 572-73.

### C. The Majority Was Correct In Holding the State Failed To Carry Its Burden On Both the Issues Of the Appellant's Receipt Of Unrecorded *Miranda* Warnings And That a Two-Step Interrogation Technique Was Not Deliberately Used

Because the record is devoid of evidence demonstrating that the Appellant received *Miranda* warnings outside of the recorded statement, the Fourteenth Court of Appeals correctly held that the State did not carry its burden to demonstrate the videotaped statement was admissible. *Id.* at 569. Likewise, the majority correctly held that the State did not carry its burden to show that a two-step interrogation technique was

38

not deliberately employed. *Id.* at 573. This Court should affirm the majority's holding on this issue.

> **RESPONSE TO THE STATE'S FOURTH ISSUE**: The erroneous admission of the recorded statement contributed to the Appellant's conviction, as the recorded statement was the primary piece of evidence identifying the Appellant as the shooter of the complainants, as opposed to the co-defendant, and was the only piece of evidence the jury asked to review during deliberations.[16]

## A. A Violation Of *Seibert* Is Constitutional Error And the Harm Analysis Under Rule 44.2(a) Is Applied

Because a violation of Seibert's ban on the two-step interrogation technique amounts to constitutional error, the appropriate harm analysis is found in Texas Rules of Appellate Procedure 44.2(a). *See Jones v. State*, 119 S.W.3d 766, 777 (Tex. Crim. App. 2003) (applying Rule 44.2(a) harm analysis to an *Elstad* violation prior to the Supreme Court's decision in *Seibert*). When constitutional error is present in a criminal case, reversal is appropriate "unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." Tex. R. App. Proc. 44.2(a). As stated by this Court, "If there is a reasonable likelihood that the error materially affected the jury's deliberations, then the error is not harmless beyond a reasonable doubt." *McCarthy v. State*, 65 S.W.3d 47, 55 (Tex. Crim. App. 2001). The ultimate question which must be answered is not "whether the jury could have convicted

---

[16] The specific wording of the fourth issue granted for review by this Court is as follows: "The lower court's majority opinion erred in holding that the appellant was harmed by the admission of his statement when there was overwhelming evidence of the appellant's guilt independent of his statement to police."

39

without regard to the error, or whether the appellate court itself would have convicted without the error, but to the historical question whether the error had influenced the jury in reaching its verdict." LaFave, et. al., 7 *Criminal Procedure* § 27.6(e) (3d ed. 2007).

As noted by the majority's opinion, this Court has previously stated that "[a] defendant's statement, especially a statement implicating her in the commission of the charged offense, is unlike any other evidence that can be admitted against the defend-ant." *McCarthy v. State*, 65 S.W.3d 47, 55-56 (Tex. Crim. App. 2001) (citing *Arizona v. Fulminate*, 499 U.S. 279, 296 (1991)); *Vasquez*, 453 S.W.3d at 576. Indeed, this Court has previously reversed a sentence of death in *McCarthy,* 65 S.W.3d at 56*,* based on the erroneous admission of a defendant's confession where there otherwise may have been enough evidence for the jury to reach the same verdict without the defendant's statement. But even if this Court believes that the evidence against the Appellant is significant, this is only one factor that can be considered in a Rule 44.2(a) harm analy-sis. *See Westbrook v. State*, 29 S.W.3d 103, 120 (Tex. Crim. App. 2000) ("While the most significant concern must be the error and its effects, the presence of overwhelming evidence supporting the finding in question can be a factor in the evaluation of harm-less error. . . . Stated in an interrogatory context, a reviewing court asks if there was a reasonable possibility that the error, either alone or in context, moved the jury from a state of nonpersuasion to one of persuasion as to the issue in question.") (internal ci-tations omitted).

**B. The Appellant's Statement Was the Primary Piece of Evidence Identifying Him As the Shooter**

In holding that the Appellant was harmed by the erroneous admission of his videotaped statement, the majority reviewed the entirety of the evidence presented against the Appellant. *Vasquez*, 453 S.W.3d at 576. The State's brief cites to multiple instances where two witnesses testified that the Appellant was heard "bragging about having shot and killed two people for a bag of weed." (State's brief at 24). But the majority analyzed the testimony that the State has again pointed to and held that it was not overwhelming. *Vasquez*, 453 S.W.3d at 576. A review of the testimony pointed to by the State reveals that the majority was correct in holding that the witnesses repeated references to "they" was too vague to constitute overwhelming evidence. *Id.*

This testimony constituted the majority of the evidence used to convict the Appellant, outside of the videotaped confession. The State's case was lacking in numerous respects. A murder weapon was never recovered that would tie the Appellant to the shooting of the complainants. (3 R.R. at 150-152). No useable fingerprints were recovered from the car in which one of the complainants had been shot, or from other pieces of evidence including a bag of marijuana that would have directly tied the Appellant to the shooting. (3 R.R. at 102- 104, 127-128). No DNA evidence linking the Appellant to scene of the crime was recovered. (3 R.R. at 100, 121-122, 135-138). A neighbor in the area of the shooting who saw activity in the area was unable to identify the Appellant. (3 R.R. at 180-181).

41

**C. The Appellant's Statement Was Viewed By the Jury On Multiple Occasions And Was the Only Piece Of Evidence the Jury Asked To Review**

In addition to the fact that the videotaped statement was the primary piece of evidence identifying the Appellant as the shooter, harm caused to the Appellant can be demonstrated in three additional ways. First, it was emphasized by the State during closing arguments. Second, the jury demonstrated the importance the statement held to its deliberations by asking to have it played again in the course of deliberating. Third, the defensive theory that the Appellant had acted in self-defense or that he had committed murder, and not capital murder, was undermined by the statements content.

Combining the indelible impact that the Appellant's videotaped statement had on the jury with the portions of the record described below demonstrating the statement's importance to the trial, the logical conclusion is that the Fourteenth Court of Appeals was correct to hold the Appellant suffered harm. *Vasquez*, 453 S.W.3d at 576.

**a. The recorded statement was emphasized by the State during closing arguments**

In its closing argument to the jury, the State emphasized that based on the Appellant's statement there was no question that he was the guilty party:

> Now, my belief obviously when I charged it is that he did every single bit of these, every single part. And from the very beginning, there's been no argument that he killed both Aleksander Lobos and Suu Nguyen. He shot and killed both of them. How do we know that? That's from his own words. You got to see it right there on the screen. And what's even more, if you really want to see it again, it's in evidence. You just ask and that'll go

42

back there and they can play every bit of it. I'm going to play a lit-
tle bit of it for you in a minute.

(5 R.R. at 93).

A short time later, the State fulfilled its promise to revisit the statement and played a 45 second excerpt from it to demonstrate that the Appellant did not act in self-defense. (5 R.R. at 101).

### b. The jury asked to view the statement during deliberations

During deliberations, the jury sent out two notes.[17] The first note asked "Could we please have the recorded statement of Jose Vasquez?" In its answer, the trial court wrote "heard in court." (C.R. at 134). Following the receipt of this note, the trial court paused the jury's deliberations, brought them back into the courtroom, and played the Appellant's recorded statement for the assembled jury. (5 R.R. at 103-104). This viewing of the Appellant's recorded statement during jury deliberations marked the third time that the video had been played for the jury, with the other two viewings occurring during its original publication, and the second time during the State's closing arguments. (4 R.R. at 115; 5 R.R. at 101, 104).

Because this was the only note the jury sent out requesting to see a particular piece of evidence or revisit any witness's testimony, the jury's note illustrates the high importance the statement had on the jury's deliberations.

_____

[17] The second note asked "Does the judge read our requests out loud to the court?" to which the trial court responded "I inform the lawyers of all requests made by the jury." (C.R. at 135).

**c. The defensive theory that the Appellant acted in self-defense or was guilty only of the lesser-included offense of murder was undermined by the recording**

The strategy of the defense at trial was not an all-or-nothing approach. Rather, the defense requested and received a lesser included charge of murder, as well as instructions on self-defense and defense of a third person. (C.R. at 149-153). Based on the contents of the Appellant's statement that was contained on the recording, any prospect that the defense may have had of obtaining an acquittal based on self-defense was completely eliminated, as the Appellant denied seeing either of the complaints wielding a deadly weapon. (State's Exhibit 150).

**D. The Majority Correctly Held That the Appellant's Recorded Statement Likely Affected the Jury's Deliberations**

If the evidence in dispute were something other than the Appellant's videotaped confession, the issue of harm might be a closer call. But because a defendant's confession is a rarified type of evidence, the presence of sufficient evidence to convict the Appellant does not prevent a holding that the Appellant suffered harm. *McCarthy*, 65 S.W.3d at 56 ("Regardless of whether there was, apart from appellant's statement, sufficient evidence to conclude that the outcome of the trial was proper, we find it impossible to say there is no reasonable likelihood that the State's use of appellant's statement materially affected the jury's deliberations."). This is particularly true in light of the jury's request to view the Appellant's statement during deliberations, and that

44

this was the only piece of testimony or evidence that the jury asked to view. (5 R.R. at 103-104; C.R. at 134).

The majority was correct in holding that the erroneous admission of the Appellant's recorded statement caused him harm and likely materially affected the jury's deliberations. *Vasquez*, 453 S.W.3d at 576. This Court should affirm the majority's holding on this issue.

## PRAYER

Jose Jesus Vasquez asks this Honorable Court to affirm the majority opinion of the Fourteenth Court of Appeals and remand the case to the trial court for further proceedings.

Respectfully submitted,

**ALEXANDER BUNIN**
Chief Public Defender
Harris County, Texas

/s Mark Kratovil
**MARK KRATOVIL**
Assistant Public Defender
Texas Bar Number 24076098
1201 Franklin Street, 13th Floor
Houston, Texas 77002
Telephone:  (713) 274-6728
Facsimile:    (713) 437-4339
mark.kratovil@pdo.hctx.net

## CERTIFICATE OF SERVICE

I certify that I provided a copy of the foregoing brief to Eric Kugler at the Harris County District Attorney's Office by electronic service through eFile Texas on June 26, 2015. A copy of this brief was also served to the State Prosecuting Attorney on the same day through eFile Texas.

/s Mark Kratovil
**MARK KRATOVIL**

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 9.4(i)(3), undersigned counsel certifies that this brief complies with the type-volume limitations of Tex. R. App. Proc. 9.4(e)(i).

1.     Exclusive of the portions exempted by Tex. R. App. Proc. 9.4 (i)(1), this brief contains **12,930** words printed in a proportionally spaced typeface.

2.     This brief is printed in a proportionally spaced typeface using Garamond 14 point font in text and Garamond 12 point font in footnotes.

3.     Upon request, undersigned counsel will provide an electronic version of this brief and/or a copy of the word printout to the Court.

4.     Undersigned counsel understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in Tex. R. App. Proc. 9.4(j), may result in the Court's striking this brief and imposing sanctions against the person who signed it.

/s Mark Kratovil
**MARK KRATOVIL**